S06A0269. OREE v. THE STATE.
S06A0270. DURHAM v. THE STATE.
(630 SE2d 390)

BENHAM, Justice.

In a joint trial, appellants Kyle Oree and Bennie Frank Durham were convicted of aggravated battery and the felony murder, with kidnapping as the underlying felony, of Robert Daughtry, Jr. Oree additionally was convicted of and sentenced for aggravated assault and Durham was convicted of and sentenced for possession of a firearm during the commission of a crime. On appeal, they jointly take issue with the sufficiency of the evidence and the exhibition to the jury of a portion of a movie called "State Property." Oree also asserts error in the trial court's refusal to permit him to present evidence that the victim had made threats which gave a fellow co-indictee who pled guilty and testified for the State a separate motive to kill the victim, and Durham argues the trial court committed reversible error when it denied his motion to sever his trial from

---

[14] *Felder v. State,* 270 Ga. 641, 644 (514 SE2d 416) (1999); *Linares v. State,* 266 Ga. 812, 815 (471 SE2d 208) (1996).

that of his co-indictees. After reviewing the record in light of appellants' enumerations of error, we conclude no reversible error was committed and affirm the judgments of conviction.[1]

Warner Robins police recovered the body of Robert Daughtry, Jr., from a trailer park's trash compactor on April 8, 2003. He had sustained blunt force injuries to his face, head, and ribs, and had suffered seven gunshot wounds to his legs and torso. The state medical examiner who performed the autopsy testified the victim had been beaten, resulting in a broken nose, several fractured ribs, sub-arachnoid hemorrhaging, and head lacerations, and shot seven times, with bullets shattering bones in his right leg, perforating both lungs, and injuring his aorta. The cause of death was determined to be multiple gunshot wounds.

The State presented evidence that Oree, a young man who sought to promote and record young rap music artists, formed an organization in early 2003 called "Original Crhyme Family" and several of its members, including the victim, lived in Oree's apartment. The victim, who provided security for Oree, left in late March 2003 as a result of an altercation between the victim and Oree over the time the victim was spending with a girlfriend. Shortly after the victim left, Oree became angry upon learning the victim was going to make a recording in Savannah. Co-indictee Melvin Daniels[2] reported

---

[1] On April 22, 2003, the Houston County grand jury returned a true bill of indictment charging appellants Oree and Durham and three others with malice murder as well as three counts of felony murder, with kidnapping, aggravated battery, and aggravated assault being the underlying felonies. The indictees were also charged in separate counts with kidnapping, aggravated battery, and aggravated assault, and appellant Durham was charged with possession of a firearm during the commission of a crime. Oree, Durham, and one other co-indictee were tried together in a trial that commenced on May 17, 2004, and concluded on May 26 with the jury's return of its verdicts finding Oree guilty of two counts of felony murder (kidnapping and aggravated assault), and the separate charges of kidnapping, aggravated battery, and aggravated assault. Appellant Durham was found guilty of felony murder (kidnapping) kidnapping, aggravated battery, and possession of a firearm during the commission of a crime. The trial court sentenced Oree to life imprisonment for one of the murder convictions, with the other murder conviction vacated by operation of law. Oree was sentenced to a consecutive 15-year sentence for aggravated battery and a concurrent 20-year sentence for aggravated assault. Durham was sentenced to life imprisonment for the felony murder conviction and received a twenty-year term of years for aggravated battery, to be served concurrently with the life sentence, and a five-year term of years for the firearm possession, to be served consecutively to the aggravated battery sentence. The convictions for kidnapping merged into the felony murder convictions. Durham's timely motion for new trial was filed June 21, 2004, and amended May 12 and 13, 2005; Oree's motion for new trial was also timely filed on June 21, 2004, and was amended May 11, 2005. The trial court denied the amended motions August 18, 2005. Oree filed a timely notice of appeal on September 6, 2005, and Durham filed a timely notice of appeal on September 16. Both appeals were docketed in this Court on October 13, 2005. Durham's appeal was submitted for decision on the briefs and Oree's appeal was the subject of oral argument heard on February 14, 2006.

[2] Before Oree and Durham were tried, Daniels pled guilty to murder, aggravated battery, and possession of a firearm during the commission of a crime. He testified he had been

the victim had returned from Savannah and was threatening to kill everyone in Oree's apartment. Witnesses testified Oree drank beer the day and evening of April 7, 2003, and told Daniels to have three others, including appellant Durham, come to Oree's apartment. When they arrived in the early hours of April 8, Oree instructed the trio and Daniels to kill the victim. Guns stored in Oree's apartment were distributed to the quartet, and they left. Some time later, one of the quartet telephoned Oree, who took the call on a speaker phone, to report the quartet had found the victim and needed direction as to what to do with him. Oree told them to beat him. The quartet returned to Oree's apartment with blood on their clothing and told Oree they had killed the victim by shooting him. According to several witnesses, this news upset Oree greatly, and one witness testified Oree told the quartet to get a blanket and return to the victim's body where they were to wrap the body in the blanket and place it in a dumpster. Oree told an occupant of the apartment to collect and dispose of the quartet's bloody clothing, and told his girlfriend and two other occupants to collect and dispose of the guns used by the quartet. The person who collected the clothing led police to the dumpster in which she had placed the clothing wrapped in a trash bag, and testified she saw Oree's girlfriend throw some of the guns into a lake in Oree's apartment complex. The dive recovery team from the Warner Robins Fire Department recovered two guns from the lake, and another witness retrieved one gun from the person to whom he had sold it and another from the place he had hidden it in pine straw near the apartment's air conditioning unit.[3]

Co-indictees Daniels and Alex Marshall[4] testified about the activities of the quartet between the time they left Oree's apartment and returned with bloodied clothing. Marshall testified Durham was the one who pulled the sleeping victim from his bed, and Daniels testified appellant Durham struck the victim. Marshall stated they took the victim to a brick wall where all of them struck him and Durham "rammed" the victim's head into the brick wall. Daniels and Durham then threw the victim over the brick wall where he was shot repeatedly by Daniels, Marshall, and co-defendant Jamaal Williams. When the quartet returned to the apartment and told Oree what they had done, a witness heard Durham tell Oree that he, too, had shot the victim.

---

sentenced to life imprisonment and five years' probation.

[3] A Brico .380 semi-automatic pistol and a Colt .38 special revolver were recovered from the lake. The other guns were a Smith & Wesson .357 Magnum revolver and a Hi-Point 9 mm pistol.

[4] Marshall had also pled guilty to murder, aggravated assault, and possession of a firearm during the commission of a crime in connection with the killing of Robert Daughtry.

A firearms examiner from the GBI State Crime Lab testified that a bullet and bullet fragments recovered from the victim's body, as well as bullets and cartridge casings found near a pool of blood between the victim's home and the dumpster in which his body was found, were fired from two of the four guns recovered. A Crime Lab forensic biologist testified he conducted DNA testing on blood found on the clothing recovered from the apartment's dumpster, including the yellow visor worn by appellant Durham, and concluded it was the victim's blood.

1. The evidence summarized above was sufficient to authorize the jury to conclude beyond a reasonable doubt that both appellants were guilty of felony murder (kidnapping) and aggravated battery, Oree was also guilty of aggravated assault, and Durham was also guilty of possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560 (1979). See also OCGA § 16-2-20 (parties to a crime).

2. Appellant Durham contends the trial court abused its discretion when it denied his motion to sever his trial from that of his co-indictees. See OCGA § 17-8-4 (defendants jointly indicted for a capital felony when the death penalty is waived "may be tried jointly or separately in the discretion of the trial court"). At the time the various motions to sever were filed and considered, there were five co-defendants. In exercising its discretion, the trial court applied the three-pronged test used in *Dennard v. State*, 263 Ga. 453 (5) (435 SE2d 26) (1993), and determined there was no persuasive argument that evidence offered against one defendant might be considered improperly against another, and no evidence of antagonistic defenses that would jeopardize each other's right to a fair trial, though the court acknowledged the possibility of the co-defendants' "finger-pointing" at one another. However, because of its concern that five defendants tried at once would create confusion concerning the evidence and the law applicable to each defendant, the trial court granted the motion to sever and ordered that no more than three defendants be tried together. Two of the five co-defendants subsequently pled guilty, leaving only Oree, Durham, and co-defendant Williams to be tried.

On appeal, Durham contends he should have been tried separately from Oree and Williams because there was no evidence he was a member of Oree's organization. However, one witness identified Durham as a member of Oree's organization who provided security, and another testified Durham visited Oree's apartment several times the weekend before the murder and spent several hours socializing with others while there. Oree's girlfriend testified Oree claimed to be a member of a gang called "The Bloods" and stated Durham was

introduced to the group as a "Blood." We conclude the trial court did not abuse its discretion when it denied Durham's motion to be tried separately.

3. Appellant Oree contends the trial court erred when it permitted the jury to view a scene from a movie, "State Property," which witnesses testified Oree watched the night the victim was killed and had watched several times prior to the victim's death. The scene shown to the jury took place after a murder had been committed and depicted a leader instructing his cohorts to wrap the body in a blanket and place it in a dumpster. Oree's girlfriend testified Oree had described the leader in the movie as the type of person Oree was and had described the movie as depicting how Oree "ran his gang members."

"[E]vidence of a movie in a criminal defendant's possession which depicts the conduct with which the defendant is charged may be admissible to show the defendant's bent of mind ... [and t]he fact that it may place the defendant's character incidentally into question does not make inadmissible what otherwise is relevant and material to the issues on trial. [Cit.]" *Rushin v. State*, 269 Ga. 599, 601 (2) (502 SE2d 454) (1998). The jury may make the permissible inference that Oree was encouraged by the movie to order the manner of disposal of the victim's body. See *Beasley v. State*, 269 Ga. 620 (2) (502 SE2d 235) (1998). In light of the precedent established in *Rushin* and *Beasley*, we cannot say the trial court erred when it admitted the portion of the movie into evidence.

4. Appellant Durham takes issue with the admission of the movie clip because the State's purpose in using the movie scene was to show Oree's bent of mind and had nothing to do with Durham, and the trial court did not instruct the jury sua sponte on the limited purpose for which the jury could consider the movie clip. "It cannot be said that the trial court erred in failing to give cautionary instructions to the jury with regard to the viewing of the movie. [Durham] made no request for such instructions." *Beasley v. State*, supra, 269 Ga. at 622.

5. Oree takes issue with the trial court's refusal to allow his counsel to elicit testimony on cross-examination of co-indictee Daniels that the victim had threatened the lives of Daniels's sister and nephew. Oree contends such evidence supported his line of defense that the victim was killed by the quartet as a result of their personal reasons for killing the victim and not in response to Oree's order to do so. Oree's counsel was not permitted to describe the victim's purported statements as "threats," but was permitted to elicit from Daniels testimony that the victim had made statements to Daniels's sister which caused Daniels concern and formed the basis for Daniels to visit the victim the day the victim was killed.

In *Klinect v. State*, 269 Ga. 570 (3) (501 SE2d 810) (1998), citing *Henderson v. State*, 255 Ga. 687 (1) (341 SE2d 439) (1986), and *Walker v. State*, 260 Ga. 737 (1) (399 SE2d 199) (1991), we set forth the requirements for admission of evidence implicating another person in the crime at bar: the proffered evidence must raise a reasonable inference of the defendant's innocence and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature. In *Henderson* and *Walker*, this Court ruled that a reasonable inference of the defendant's innocence was raised by evidence that rendered the desired inference more probable than the inference would be without the evidence.

Evidence in the case at bar that the victim made threats which gave Daniels, one of the victim's confessed killers, motive to kill the victim, renders the desired inference (that the victim was killed because Daniels, not Oree, wanted him dead) more probable than the inference would be without the excluded evidence, and directly connected Daniels to the victim's murder in that he admitted he visited the victim the night the victim was killed because of the victim's threats. Consequently, the excluded evidence should have been admitted.[5] However, we conclude the omission of the evidence amounts to harmless error inasmuch as Oree's participation in the crimes was not limited to his ordering the quartet to kill the victim and there was overwhelming evidence of Oree's role as a party to the crime, making it highly improbable the jury's verdict would have been affected had the evidence been admitted. *Hodges v. State*, 265 Ga. 870 (4) (463 SE2d 16) (1995).

*Judgment affirmed in Case No. S06A0269. All the Justices concur, except Sears, C. J., who concurs in the judgment only as to Division 3. Judgment affirmed in Case No. S06A0270. All the Justices concur.*

DECIDED MAY 17, 2006 —
RECONSIDERATION DENIED JUNE 12, 2006.

*Drew Findling, Cris E. Schneider*, for appellants.

---

[5] The trial court rejected the evidence on the ground that it adversely affected the character of the murder victim. While the character of a murder victim is generally inadmissible as irrelevant, if evidence that impugns the murder victim's character has some factual nexus with the conclusion for which it is being offered, it is admissible. See *Roseberry v. State*, 274 Ga. 301 (2) (553 SE2d 589) (2001).

*Kelly R. Burke, District Attorney, Katherine K. Lumsden, Timothy M. Marlow, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General,* for appellee.