S12A0742. WILLIAMS v. THE STATE.
(732 SE2d 47)

NAHMIAS, Justice.

Appellant Jamaal Williams was indicted along with Alex Marshall, Melvin Daniels, Bennie Durham, and Kyle Oree for numerous

crimes related to the shooting death of Robert Daughtry, Jr.[1] Marshall and Daniels pled guilty to murder and other charges, and they testified for the State at the joint trial of Appellant, Durham, and Oree. The jury found Appellant guilty of felony murder, kidnapping, and other crimes. Durham and Oree were also found guilty of felony murder and other charges. We have already affirmed their convictions. See *Oree v. State*, 280 Ga. 588 (630 SE2d 390) (2006).

In this appeal, Appellant challenges the sufficiency of the evidence supporting the kidnapping felony that served as the predicate offense for his felony murder conviction, as well as the trial court's admission of alleged hearsay statements. We affirm.

1. (a) Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that Oree became angry at the victim and directed Appellant, Marshall, Daniels, and Durham to kill him. See *Oree*, 280 Ga. at 590 (reviewing the evidence more extensively). In the middle of the night, the four men armed themselves, left Oree's apartment, and went to the victim's trailer, where the victim was sleeping; his girlfriend, his roommate, and a neighbor were also there. The victim was pulled from his bed and beaten. The four assailants then dragged the victim out of the trailer and down a street to a brick wall behind a doctor's office near but outside the trailer park, where they beat him again before shooting him numerous times, killing him. See id. at 589-591.

(b) Appellant contends that the evidence was insufficient to support the asportation element of kidnapping as defined by this Court in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).[2] *Garza* held

---

[1] The crimes occurred in Houston County during the early morning hours of April 8, 2003. On April 22, 2003, Appellant was indicted for malice murder, three counts of felony murder (with kidnapping, aggravated battery, and aggravated assault as the underlying felonies), kidnapping, aggravated assault, aggravated battery, and possession of a firearm during the commission of a crime. Following a jury trial, Appellant was found guilty on May 26, 2004 of two counts of felony murder (kidnapping and aggravated assault), kidnapping, aggravated assault, and possession of a firearm during the commission of a crime, and not guilty of the other charges. The trial court sentenced Appellant to life in prison for the felony murder conviction predicated on kidnapping, a 20-year concurrent term for aggravated assault, and five years consecutive on the firearm count. The additional felony murder and the kidnapping convictions merged for sentencing purposes. On June 3, 2004, Appellant filed a motion for new trial, which was amended on June 9, 2005, and denied on August 18, 2005. On November 1, 2011, Appellant filed a motion for an out-of-time appeal, which was granted. The notice of appeal was filed on November 14, 2011, and the case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

[2] Although *Garza* was decided several years after Appellant's trial, it announced a new substantive rule of criminal law that applies to his case. See *Hammond v. State*, 289 Ga. 142, 144 (710 SE2d 124) (2011). The General Assembly abrogated *Garza* by enacting a statutory definition of asportation that applies to trials held after July 1, 2009. See Ga. L. 2009, p. 331, § 1; OCGA § 16-5-40 (b).

that four factors should be considered in deciding whether the movement of a victim constitutes asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702. However, "this Court has not required satisfaction of all four factors to establish that asportation . . . occurred." *Hammond v. State*, 289 Ga. 142, 145 (710 SE2d 124) (2011) (finding that the movement of the victim constituted asportation when the first two factors were not satisfied but the third and fourth were).

Appellant contends that the first *Garza* factor was not satisfied because the victim's movement was short, both temporally and physically.[3] However, the record shows that after the attackers beat the victim inside the trailer where he had been sleeping, the attackers moved him out of the trailer and down the street, outside the trailer park, to behind a doctor's office. While the time and distance spanned by this movement may not have been lengthy, the movement was considerably longer than in cases where we have concluded that this factor was not satisfied. See *Tate v. State*, 287 Ga. 364, 366 (695 SE2d 591) (2010) (where the movement of the victims was limited to the inside of a house); *Henderson v. State*, 285 Ga. 240, 244 (675 SE2d 28) (2009) (where the movement was confined to a duplex); *Garza*, 284 Ga. at 704 (where the only movement of one victim was a fall to the floor from a standing position, followed by the victim's rising to sit in a chair, and the movement of the second victim was from one room to another). The movement of the victim in this case was well beyond the "slight" movement that concerned the Court in *Garza*, and thus the first *Garza* factor was satisfied.

Appellant also contends that the second *Garza* factor was not met because the victim's movement occurred during the commission of the separate offense of aggravated battery. The evidence, however, shows a demarcation between the aggravated battery offense (of which Appellant was acquitted) and the movement of the victim. The victim was beaten before and after he was moved by his attackers,

---

[3] While "duration" is a temporal rather than a physical concept, we have considered both the time and distance of the victim's movement under the first *Garza* factor. See, e.g., *Jones v. State*, 290 Ga. 670, 671 (725 SE2d 236) (2012).

first inside his trailer and later at the brick wall behind the doctor's office, but there is no indication of an aggravated battery occurring while he was being moved between the two locations.

Similarly, with regard to the third *Garza* factor, the victim's movement was not an inherent part of a separate offense. It was not a necessary part of the beating, which formed the basis for the aggravated battery offense, or of the shooting, which formed the basis for the murder and aggravated assault offenses.[4]

Finally, Appellant argues that the fourth *Garza* factor — whether the movement itself presented a significant danger to the victim — was unsatisfied because the trailer from which the victim was moved was more secluded, and therefore less safe, than the brick wall to which he was moved. However, there were three people other than the victim in the trailer, which was situated in a trailer park, and no evidence of anyone else near the brick wall outside the park. The jury was therefore authorized to conclude that taking the victim to a secluded location outside the trailer in the middle of the night presented a significant additional danger to the victim. See *Henderson*, 285 Ga. at 245; *Tate*, 287 Ga. at 366.

In sum, all four *Garza* factors support the conclusion that the evidence was sufficient to prove the asportation element of Appellant's kidnapping and related felony murder offenses.

(c) Appellant also contends that because the record does not show that he personally participated in the physical movement of the victim, the State failed to prove him guilty of kidnapping and felony murder. However, the evidence clearly establishes that Appellant was a party to the crime of kidnapping, and thus he was culpable for the acts of his co-parties in moving the victim. See OCGA § 16-2-20.

> "Since there was evidence that appellant was present when the crimes were committed and the jury could infer from [his] conduct before and after the crimes that [he] shared the criminal intent of the actual perpetrator[s], the evidence was sufficient to authorize [Appellant's] conviction as a party to [the crimes of kidnapping and murder]."

*Hill v. State*, 281 Ga. 795, 797 (642 SE2d 64) (2007) (citation omitted).

(d) When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to

---

[4] Because these two factors were satisfied in any event, we need not decide in this case whether an offense of which the defendant was acquitted qualifies as a "separate offense" under *Garza*'s second and third factors.

authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the trial court improperly admitted hearsay evidence by permitting a witness to testify to various out-of-court statements made by Oree and the other co-conspirators before and after the victim was killed. However, Appellant did not object to these statements at the time they were admitted at trial, which normally bars review of the alleged error on appeal. See *Brooks v. State*, 281 Ga. 514, 516 (640 SE2d 280) (2007).

Appellant suggests that these evidentiary issues are subject to review on appeal for "plain error." However, in criminal cases, plain error review currently is limited to appellate review of alleged errors in the sentencing phase of a trial resulting in the death penalty, see *Sharp v. State*, 286 Ga. 799, 801 (692 SE2d 325) (2010); to alleged violations of OCGA § 17-8-57, see *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010); and, since July 1, 2007, to properly asserted errors in jury instructions, see OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 32 (718 SE2d 232) (2011). Thus, plain error review does not apply to the evidentiary issue raised in this case. See *Brooks*, 281 Ga. at 516 (holding that plain error review was not available for alleged improperly admitted testimony).

We note that the new Georgia Evidence Code will change this rule for cases tried after January 1, 2013. See OCGA § 24-1-103 (d) ("Nothing in this Code section [relating to evidentiary rulings and objections] shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."). However, this law-to-be does not aid Appellant's case today. Because Appellant failed to timely object to the alleged hearsay evidence introduced at his trial in 2004, he failed to preserve the issue for appeal.

Moreover, even if Appellant had timely objected on hearsay grounds, the objections would have been meritless. Appellant contends that OCGA § 24-3-5 requires the State to make a prima facie showing of the existence of a conspiracy before a co-conspirator's statement may be admitted as an exception to the hearsay rule. However, this Court has held that "[t]he trial judge may admit testimony by co-conspirators before the conspiracy has been proved, provided [the conspiracy's] existence is ultimately shown at trial." *Livingston v. State*, 271 Ga. 714, 719 (524 SE2d 222) (1999). Here, the evidence ultimately admitted at trial established that Appellant, the

other three attackers, and Oree were part of a conspiracy to assault and kill the victim. See *Oree*, 280 Ga. at 589-590.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*David G. Daniell*, for appellant.

*George H. Hartwig III, District Attorney, Marie R. Banks, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.