FINAL COPY
294 Ga. 650

S13A1458.  INMAN v. THE STATE.

NAHMIAS, Justice.

Appellant Kenneth Lee Inman was convicted for murdering Philip Tedder, kidnapping Tedder and James Niebaum, and related crimes.  He appeals those convictions and the trial court's denial of his motion for new trial.  We affirm.[1]

1.    (a)    Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following.  Appellant occasionally used drugs with Tedder and Niebaum, and the three men also periodically worked together.  On

---

[1] The crimes occurred on June 15, 2005.  On September 22, 2005, a Peach County grand jury indicted Appellant for malice murder, felony murder based on aggravated assault, two counts of kidnapping with bodily injury, aggravated battery, aggravated assault, and possession of a firearm during the commission of a felony.  On September 18, 2006, the State filed a notice of intent to seek the death penalty.  On December 21, 2006, Appellant filed a motion for immunity from prosecution based on defense of habitation, which the trial court heard in October 2007 and denied on December 26, 2007.  On February 25, 2008, the State withdrew its notice of intent to seek the death penalty, and after a trial on February 25-29, 2008, the jury acquitted Appellant of malice murder but found him guilty of the other charges.  On June 13, 2008, the trial court sentenced Appellant to serve life in prison for the felony murder of Tedder; a concurrent life sentence for each kidnapping conviction; a concurrent 20-year term for aggravated battery against Tedder; a consecutive 20-year term for aggravated assault against Niebaum; and a five-year term for the firearm conviction to run consecutive to the life sentence for felony murder.  On June 27, 2008, Appellant's trial counsel filed a motion for new trial, which new post-trial counsel amended on September 17, 2009.  After a hearing on the amended motion on September 25, 2009, Appellant's first post-trial counsel was allowed to withdraw.  On February 4 and May 25, 2011, attorneys with the public defender's office filed entries of appearance.  On March 12, 2012, Appellant's current counsel filed an entry of appearance and an amended motion for new trial, which the trial court denied on April 15, 2013.  After Appellant filed a timely notice of appeal, the case was docketed in this Court for the April 2013 term and orally argued on September 10, 2013.

the evening of June 14, 2005, Appellant called Tedder about doing a job the following day. The next morning, Tedder and Niebaum drove to Appellant's house, where Appellant greeted them and invited them inside. The three men sat down in the living room, but after a few minutes, Appellant went into another room and returned with a shotgun in one hand and a pistol in the other. He demanded that Tedder and Niebaum pay him for marijuana that he believed they had stolen from his house when he was out of town. Tedder and Niebaum denied stealing Appellant's marijuana, and Niebaum, in an attempt to defuse the situation, took all the money out of his wallet and threw it on the living room table.

Appellant told Tedder and Niebaum that he was going to make them dig their own graves in the back yard and then forced them at gunpoint out the back door. As Niebaum walked toward a shed in the back yard, Appellant and Tedder began to argue, and Appellant fired the pistol twice at Tedder's feet and twice more at Niebaum's feet, grazing his pants leg. Niebaum tried to flag down a vehicle that was going down the road in front of Appellant's house; when Appellant saw that, he shot Niebaum in the leg with the shotgun, knocking him down. Appellant then turned his attention back to Tedder, shooting him once

2

in each foot with the shotgun. Appellant continued firing at Tedder with the shotgun, but the remaining shells were duds, so Appellant grabbed the shotgun by the barrel and used it as a club to beat Tedder, who fell to the ground. The driver of the passing vehicle called 911 after hearing Tedder screaming for help and seeing Appellant hitting him with the shotgun. Appellant then beat Tedder with his fists, grabbed Tedder by the shirt, pulled him up into a sitting position, and shot him in the chest with the pistol. Appellant dragged Tedder behind the shed; he ordered Niebaum to begin crawling over to Tedder and then dragged Niebaum the rest of the way. When he had the two victims together behind the shed, Appellant bound their feet and tried to drag them behind his motorcycle, but the rope broke. Appellant then fled on foot into the surrounding woods, where the police found him hiding behind some bushes and arrested him. Tedder died at the scene as a result of the shot to his chest.

(b)    Appellant contends that under Garza v. State, 284 Ga. 696 (670 SE2d 73) (2008), the evidence was insufficient to support his convictions for kidnapping. In Garza, this Court identified four factors to consider in determining if the evidence regarding movement of a victim was sufficient to meet the asportation element of kidnapping:

3

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702. The reviewing court considers these factors as a whole; not all four must be met to establish that the evidence was sufficient to sustain a kidnapping conviction. See Thomas v. State, 289 Ga. 877, 880 (717 SE2d 187) (2011) (affirming the kidnapping convictions because, although the duration of the victim's movement was short, the other three factors supported the convictions).[2]

The evidence presented at trial showed that Appellant forced the two victims at gunpoint to move from inside the house to the back yard, telling them they were going to "dig a hole" for themselves. And after he shot both victims, he dragged Tedder behind the shed and forced Niebaum to crawl in that direction before dragging Niebaum too behind the shed. This movement of the victims, while not extensive in distance or duration, was not trivial, and it

---

[2] Although Garza was decided shortly after this case was tried, it effected a substantive change in the law and thus is applied retroactively. See Hammond v. State, 289 Ga. 142, 144 (710 SE2d 124) (2011). Garza has been superseded by statute, however, for kidnapping offenses committed after July 1, 2009. See Thomas, 289 Ga. at 878 & n. 3.

4

increased the danger posed to the victims by moving them behind the house, behind the shed, and toward the surrounding woods. See Williams v. State, 291 Ga. 501, 504 (732 SE2d 47) (2012) (holding that dragging the victim outside his trailer and putting him behind a brick wall presented an additional danger to him). Moreover, the movement was not an inherent part of the aggravated assaults, aggravated battery, or felony murder and did not occur during the commission of those crimes, but rather before or after the crimes were committed.

Considering the Garza factors as a whole, we conclude that there was sufficient evidence to support Appellant's kidnapping convictions, and the evidence presented at trial and summarized above was also sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the other crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2. Appellant's original lawyer, Joseph Maccione, hired Ray Shouse,

an unlicensed investigator, to help prepare Appellant's case.[3] Shouse later discussed the case to some extent with the assistant district attorney (ADA) prosecuting the case. Appellant changed lawyers before trial, and his new counsel, claiming that Shouse had violated Appellant's attorney-client privilege, filed a motion asking the trial court to bar the State from calling Shouse or any witnesses with improperly obtained information, to suppress any evidence coming from Shouse, and to recuse the ADA who spoke to Shouse. At a hearing held before trial to discuss pending motions, however, counsel for both parties advised the court that the State had agreed not to call Shouse or anybody with knowledge of Shouse's information as a witness; thus, the court was not asked to rule on Appellant's motion.

(a) Appellant argues that the ADA's discussion with Shouse constituted prosecutorial misconduct requiring Appellant's convictions to be reversed. Even assuming that Shouse improperly provided information about Appellant's case to the prosecutor, however, Appellant was not harmed because

---

[3] Maccione's use of this investigator with Appellant and other clients ultimately led to the voluntary surrender of his license to practice law. See In the Matter of Maccione, 290 Ga. 367 (720 SE2d 646) (2012); In the Matter of Maccione, 289 Ga. 17 (710 SE2d 745) (2011). But these opinions do not mention or rely on any allegedly improper contact between Shouse and prosecutors.

the State agreed not to present any information provided by Shouse at trial and there is no evidence that the State failed to honor that agreement or used Shouse's information in any other way.  At the motion for new trial hearing, Appellant testified that at the pretrial hearing on his motion for immunity based on defense of habitation, he "could tell then that by some of the things that were said that [the ADA] had inside information on some things that were said that nobody knew except me and Shouse."  Appellant did not, however, identify what any of those "things" might be, and Appellant's trial counsel testified that the ADA had said he did not believe Shouse's information.  This claim therefore lacks merit.  See Johnson v. State, 258 Ga. 856, 858 (376 SE2d 356) (1989) (concluding that a prosecutorial misconduct claim lacked merit because, even assuming the prosecution violated the defendant's attorney-client privilege, he was not harmed).

(b)    Appellant also argues that his original counsel, Maccione, provided ineffective assistance with regard to Shouse and his disclosures to the prosecution.  Assuming that this claim was properly preserved for review on appeal, it lacks merit.  Under Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), to prevail on a claim of ineffective assistance of

7

counsel, Appellant must show both "that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him." Toomer v. State, 292 Ga. 49, 58 (734 SE2d 333) (2012). "[W]e need not address both components of the Strickland test if the defendant made an insufficient showing on one." Id. As discussed above, Appellant has shown no prejudice from Maccione's ill-considered hiring of Shouse because he has not shown that any information allegedly disclosed by Shouse was used to convict him.

3.     Appellant filed a pretrial motion for immunity from prosecution based on defense of habitation. After an evidentiary hearing, the trial court denied the motion. Appellant argues that the court erred because the evidence presented at the hearing showed that he was defending his house when he used deadly force against Tedder and Niebaum.

A person is justified in using deadly force in defending his habitation against another's unlawful entry only if

. . .

(1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;

(2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or

(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

OCGA § 16-3-23. A person who uses such force is generally immune from prosecution. See OCGA § 16-3-24.2.

At the immunity hearing, Appellant testified as follows: Tedder and Niebaum entered his house without being invited and, once inside, Tedder picked up Appellant's pistol and began threatening him. Appellant ran away into his yard. He then heard shots being fired and ran back into the house to retrieve his shotgun, with Tedder following him. Niebaum came toward him from a different angle, threatening him with a shovel. Appellant shot Niebaum in the leg to prevent him from attacking with the shovel and shot Tedder to

9

prevent him from attacking with the pistol.

Niebaum also testified at the hearing, however, and he presented a markedly different account. According to Niebaum, Tedder never grabbed the pistol, and neither he nor Tedder ever threatened Appellant. Instead, Appellant invited them into his house and then threatened them with both a pistol and shotgun before forcing them outside and shooting them there.

Construing this conflicting evidence in the light most favorable to the trial court's ruling, see Sifuentes v. State, 293 Ga. 441, 444 (746 SE2d 127) (2013), Tedder and Niebaum did not enter Appellant's home "in a violent and tumultuous manner" or "unlawfully and forcibly," nor did they enter "for the purpose of committing a felony therein"; instead, Appellant invited them in and then threatened and assaulted them. Accordingly, the trial court's denial of immunity was supported by the evidence.

4. Appellant contends that when the trial court re-charged the jury on voluntary manslaughter, part of the instruction misrepresented the law of self-defense. In its initial jury instructions, the court gave the pattern charges on malice murder, felony murder, voluntary manslaughter, and self-defense. Before the jury began deliberations, the court granted Appellant's request to

bring the jury back in to give an instruction explaining the interaction between voluntary manslaughter and self-defense. At the State's request, the court gave this additional charge in the context of the entire voluntary manslaughter charge, repeating the pattern voluntary manslaughter charge with Appellant's requested charge added on.

After beginning deliberations, the jury sent a question to the court requesting clarification of the differences between malice murder, felony murder, and voluntary manslaughter. The court responded by re-reading the charges on those three offenses, although it slightly altered the voluntary manslaughter charge to say "shall" where the court had twice previously said "may": "If there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, which the jury in all cases shall decide, the killing *shall* be attributable — attributed to revenge and be punished as for murder." (Emphasis added.) The court also repeated the instruction regarding the interaction between self-defense and voluntary manslaughter.

Appellant did not object, but he now argues that the final re-charge gave the jury the erroneous impression that it was required to find him guilty of

11

murder if there was any interval between his provocation and his killing of Tedder, even if he was acting in self-defense. Because Appellant did not object to this charge at trial, we review it only for plain error, see OCGA § 17-8-58 (b), meaning that we will reverse the trial court only if the error was obvious, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See State v. Kelly, 290 Ga. 29, 33 (718 SE2d 232) (2011). Viewing the jury instructions as a whole, the jury was properly instructed on self-defense and its interaction with the other charges, and the jury would not have believed that if there was an interval between Appellant's alleged provocation and his killing of Tedder, it could not find that he acted in self-defense. The jury simply did not conclude that Appellant actually acted in self-defense. Thus, there was no plain error. See Van v. State, 294 Ga. 464, 466 (___ SE2d ___) (2014).

5. Appellant contends that his trial counsel was ineffective in several ways, but he has not shown that he was prejudiced by any of the alleged deficiencies. See Strickland, 466 U. S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

12

First, Appellant asserts that his trial counsel was ineffective in failing to meet with him in the month before trial and not preparing him for his trial testimony. At the motion for new trial hearing, however, trial counsel testified that he and his defense team spent several hundred hours preparing the case for trial and discussed the case extensively with Appellant, and Appellant offered no evidence to show how more preparation would have changed his trial testimony or the outcome of the trial. See Walker v. State, 288 Ga. 174, 179-180 (702 SE2d 415) (2010) (holding that the defendant did not prove prejudice when he "presented no evidence at the motion for new trial hearing to support his bald assertion that there was a reasonable probability that the outcome of the proceeding would have been different").

Second, Appellant asserts that trial counsel should have objected to certain photographs and physical evidence introduced by the State and to allegedly false statements made by the prosecutor in closing argument. Appellant has made no showing, however, that any such objection would have been meritorious. See Hargrove v. State, 291 Ga. 879, 883 (734 SE2d 34) (2012) (holding that the defendant did not establish prejudice when he failed to show that the objection he believed counsel should have made would have been successful).

Finally, Appellant contends that his trial counsel should have introduced an x-ray of his hand that showed an injury from the altercation with Tedder and Niebaum and should have called seven witnesses, including the x-ray technician. But again Appellant has failed to show prejudice, because at the motion for new trial hearing, he did not produce the alleged x-ray or offer any other evidence beyond his own testimony showing that he had sustained a hand injury; only one of the seven witnesses testified. See Crowder v. State, 294 Ga. 167, 169-170 (751 SE2d 334) (2013) ("At the motion for new trial hearing, '(e)ither the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony.' . . . Without making any such evidentiary showing at the motion for new trial hearing, appellant cannot establish a reasonable probability that the outcome of his trial would have been different." (citation omitted)). Moreover, the one witness testified only about what Appellant's house looked like when he visited a week to ten days after the shootings — testimony that had no reasonable probability of affecting the outcome of the case.

Thus, Appellant's ineffective assistance of trial counsel claims fail.

Judgment affirmed. All the Justices concur.

14

Decided March 3, 2014.

Murder. Peach Superior Court. Before Judge Brown.

<u>McNeill Stokes</u>, for appellant.

<u>K. David Cooke, Jr., District Attorney, Cynthia T. Adams, Elizabeth K. Bobbitt, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General</u>, for appellee.