311 Ga. 547
FINAL COPY


S21A0320.  FELTS v. THE STATE.


BETHEL, Justice.

A Fulton County jury found William Felts guilty of malice

murder and other offenses in connection with the stabbing deaths of

Delarlonva Mattox, Jr., and Chrisondra Kimble. Felts appeals,

arguing that the evidence presented at trial was insufficient to

support his convictions. We affirm.[1]

---

[1] The crimes occurred on April 5, 2007. On April 20, 2007, a Fulton County grand jury indicted Felts and Jeremy Moody on 11 counts in connection with the deaths of Kimble and Mattox: malice murder (Counts 1 and 2), felony murder (Counts 3 and 4), aggravated assault (Counts 5 and 6), aggravated assault with intent to rob (Counts 7 and 8), kidnapping with bodily injury (Counts 9 and 10), and rape of Kimble (Count 11). On May 1, 2007, the State gave notice of its intent to seek the death penalty against Felts and Moody. On December 17, 2009, the trial court granted Moody's motion for severance. His case is not part of this appeal.

At a death penalty trial held from February 22 to March 2, 2016, the jury found Felts not guilty of Count 11 but guilty of the other counts. In the sentencing phase, the jury found the existence of two aggravating circumstances as to each murder but fixed the sentence as life imprisonment without the possibility of parole for each count of murder. In accordance with the sentencing verdict, the trial court sentenced Felts to life in prison without the possibility of parole for both Counts 1 and 2, to be served concurrently. Counts 3 and 4 were vacated by operation of law, and Counts 5 and 6 merged

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On April 5, 2007, 13-year-old Kimble and 15-year-old Mattox were at Mattox's house in College Park. They left the house around 4:00 p.m. to buy snacks at a store. Mattox told their grandmother before they left the house that they planned to walk to the store through a shortcut in some nearby woods surrounding an elementary school. Kimble and Mattox walked to the store, purchased several items, and left around 5:30 p.m. They never returned home.

Later that evening, Mattox's family became concerned. Mattox's father called the police, and the families and some neighbors searched the area for Kimble and Mattox. Their bodies were found off the pathway in the woods around the elementary

into Counts 1 and 2, respectively. The trial court also sentenced Felts to concurrent terms of 20 years in prison on both Counts 7 and 8 and concurrent life sentences on Counts 9 and 10.

Felts filed a motion for new trial on March 24, 2016, which he amended on March 18, 2019. Without holding a hearing, the trial court denied the motion, as amended, on January 14, 2020. Felts filed a motion for leave to file an out-of-time appeal on March 9, 2020, which the trial court granted the same day. Felts filed a notice of appeal on March 10, 2020. Felts's case was docketed to this Court's term commencing in December 2020 and submitted for a decision on the briefs.

school at approximately 4:00 the next afternoon. When they were found, both Kimble and Mattox were lying on the ground unclothed. Their clothes were found in a pile nearby. Mattox's face was covered in blood, and a belt was tied around his ankles. Both were dead.

Kimble's autopsy revealed that she had injuries consistent with strangulation and that she was stabbed sixteen times: three times in her head and thirteen times in her neck. Kimble ultimately died from the stab wounds to her neck. She had abrasions on her face and thighs that were consistent with having her face and the front of her body pressed and rubbed repeatedly against the ground. She also had vaginal bruising and injuries. Investigators found Moody's DNA inside Kimble's vagina.

Mattox's autopsy revealed that he died of 35 to 40 stab wounds to the head, neck, and chest. The wounds to his neck and chest caused significant blood loss. According to the medical examiner, the head wounds would have taken a "huge amount" of force and would have been painful, as four of them went through his skull and into his brain. Other head wounds showed signs of "drag," indicating that

3

Mattox was moving his head from side-to-side as he was stabbed. Two stabs to his chest punctured vital blood vessels, and stabs to his neck punctured his left carotid artery and both jugular veins.

The stab wounds suffered by both Kimble and Mattox were consistent with having been inflicted by a blunt, rectangular object such as a flathead screwdriver. The medical examiner testified that, due to the size and fitness of the victims and the number and extent of their injuries, it would have been "really difficult, if not impossible" for one person to have inflicted all of the injuries without assistance. The medical examiner testified that "once these injuries started occurring, I think [the victims] would be trying to get away. I think it would be very hard for one person to control them." The medical examiner testified that it was "unreasonable" to conclude that a person could be holding the belt that was tied around Mattox's ankles while stabbing Kimble. Further, Mattox played baseball, basketball, soccer, and was on the swimming team. Witnesses testified that he lifted weights, and they described him as "buff," "very athletic," and "physically strong." The officer who collected the

clothing that was piled near the victims' bodies testified that, in examining a t-shirt, a jacket, and a pair of tennis shoes associated with Mattox and a shirt, a pair of jeans, and tennis shoes associated with Kimble, she saw no signs of blood or defects consistent with stabbing on those items or any sign that Kimble's shirt had been ripped.

Moody called his girlfriend, Tameka Wright, around 5:21 p.m. on April 5, the day the victims went missing, and told her that he was going to rob someone so that he could bring her some money. At 7:11 p.m., Wright called Moody, and he told her that he had money for her from two drug dealers he had just robbed. Around noon on April 7, Wright called the police and reported what Moody had told her. The police located Moody at a nearby bus station. He was searched, and the police found information about bus tickets to Texas and Florida in his possession. Moody was placed under arrest.

Virginia Spear, a friend of Felts, testified that, on the afternoon of April 5, Felts and Moody came to her home near the elementary school. Moody seemed "nervous and edgy," and Felts seemed

5

"sleepy." Both Felts and Moody made statements in Spear's presence seeming to brag about committing crimes.[2] According to multiple witnesses, Felts made plans that evening to leave the area because he feared being connected to the killing of the victims.[3]

Osborne Chappell, Felts's cousin, testified that, on April 7, Felts's mother asked Chappell to drive Felts to a relative's home in South Carolina. Chappell agreed and drove Felts to South Carolina that day. The police located Felts in South Carolina and arrested

---

[2] Before leaving the house that night, Spear overheard Moody say to his girlfriend, "You should see me now. Watch the news. Your man is a bad boy." Spear gave a written statement to the police on April 7, 2007, which was also admitted into evidence. In that statement, Spear stated that she did not trust Felts, she thought he was "evil," she knew he robbed people, and that "he had bragged about committing those types of crimes."

[3] Spear testified that Felts told her he was leaving for South Carolina because someone had approached him "on the street" and accused him of killing Kimble and Mattox. According to a statement given by Spear to the police, Felts told Spear he "would never kill those kids" but that he was leaving for South Carolina because someone would hurt him due to the rumors. The State also introduced a video recording of an interview with Felts's friend, Lakechia McCoy, who was largely uncooperative during her direct examination at trial. However, McCoy said in her interview that, on the morning of April 6, Felts stated that a friend heard Felts "had something to do with those kids being murdered." Felts then told McCoy that he was about to "get ready to go out of town because [his friend] hit me with this I got something to do with those murders and them people after me." McCoy stated that Felts's mother came to pick him up around 10:30 a.m. and that McCoy did not see Felts again after that.

him on April 12. The officer who arrested Felts gave the *Miranda*[4] warnings after handcuffing Felts and placing him into the police vehicle.

Following his arrest, and after again receiving *Miranda* warnings, Felts was interviewed. He told the police the following. He noticed Moody was acting strangely for a few days before the murders, and he could tell Moody was going to do something "foolish." On April 5, he and Moody were in or near the woods by the elementary school "plotting what [they were] going to do to come up on some money." He knew Moody "was on cocaine." He told Moody that Moody needed to sit down, but "Moody was not one to go sit down, period. Bottom line. He was gonna stay out until he found him a victim."

When they spotted Kimble and Mattox walking down the street, Felts stood near a tree and acted as a lookout while Moody approached them and began talking to them and leading them

---

[4] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

toward the woods. It looked like Moody was trying to force Kimble and Mattox to kiss, hug, or have sex with each other when he first confronted them. The closer Moody got them to the woods, the worse Felts started feeling. Moody had his hands in his pockets when he approached Kimble and Mattox, and "[a]ny time Moody got his hands in his pocket, he got a weapon." Felts knew Moody had something that looked like a box cutter or a screwdriver, and he saw it in Moody's hand once Moody had forced Kimble and Mattox into the woods.

Once by the woods, Moody specifically tried to trick Mattox by offering him beer, but Mattox was not persuaded. Moody then forced Kimble and Mattox into the woods.[5] Mattox resisted Moody, and Felts saw Moody hit Mattox with some type of object and knock him to the ground. Felts said he saw Kimble backing up and trying to put her hand up while Moody was holding the weapon with which he previously hit Maddox. He then saw Moody attack Kimble, begin ripping at her shirt, throw her to the ground, and begin to choke her.

---

[5] Felts stated that Moody "drug them kids over there behind that cut."

Felts did not want anything to do with what Moody was doing. Kimble was screaming as Felts began to walk away, but by the time he reached the end of the street, the screaming had stopped.

Felts told the police that he and Moody had only planned to rob Kimble and Mattox and that he did not know Moody planned to "go that far." Felts claimed that he never touched either victim and that he was not with Moody when Moody killed Mattox and raped and killed Kimble. He said that he saw Moody again later that afternoon.

2. In three separate enumerations of error, Felts contends that the evidence presented at trial and summarized above was insufficient as a matter of constitutional due process to support his convictions for malice murder, aggravated assault with intent to rob, and kidnapping with bodily injury.[6] See *Jackson v. Virginia*, 443 U.

---

[6] As part of his first enumeration of error, Felts argues that when the trial court considered his argument in his motion for new trial that the jury's verdicts should be set aside under the "general grounds" in OCGA §§ 5-5-20 and 5-5-21, it should have considered that no evidence connected Felts to the crimes, that considerable evidence connected Moody to the crimes, and that, at some point, Moody stated that Felts had nothing to do with the crimes. We do not consider these issues when reviewing the sufficiency of the evidence under *Jackson v. Virginia*, as we are concerned solely with whether the evidence presented at trial, viewed in the light most favorable to the verdicts,

S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). When evaluating the sufficiency of evidence, this Court views the evidence presented at trial in the light most favorable to the verdicts and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See id. Felts contends that the only conclusion to be drawn from the evidence presented at trial is that Moody was the sole perpetrator of these offenses. We disagree and conclude that the evidence presented at trial was sufficient to authorize his convictions.[7]

---

establishes each element of the crimes of which the defendant was convicted and whether a rational trier of fact could have found the defendant guilty of those crimes beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Weighing conflicts in the evidence or judging the credibility of the witnesses is the job of the trial court, not this Court, in considering a motion for new trial on the general grounds. See *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013). Moreover, to the extent Felts argues that the trial court erred by not granting him a new trial on the general grounds, he makes no effort to assert that the trial court misunderstood its discretion under OCGA §§ 5-5-20 and 5-5-21 or that it conflated its role under those statutes with the requirements of *Jackson*. Compare *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019) (noting that "when the record reflects that the trial court reviewed the motion for new trial [on the general grounds] only for legal sufficiency of the evidence, the trial court has failed to exercise [its] discretion" as the "thirteenth juror"). Thus, we do not disturb the trial court's determination that Felts should not be granted relief on the general grounds.

[7] Felts's enumerations of error include a challenge to the evidence to

(a) We first consider the sufficiency of the evidence with regard to the counts for the malice murder of Kimble and Mattox.

> A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder, as malice incorporates the intent to kill. Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, while malice is implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious.

(Citations and punctuation omitted.) *Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019); see also OCGA § 16-5-1.

Moreover, under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged

---

support his convictions for the felony murder and aggravated assault of Mattox and Kimble, but because the aggravated assault counts merged into the malice murder convictions and the felony murder counts were vacated by operation of law, Felts was not sentenced on any of those counts. Accordingly, any challenge to the sufficiency of the evidence presented at trial as to those counts is moot. See *Welch v. State*, 306 Ga. 470, 473 (1) n.5 (831 SE2d 761) (2019).

11

with and convicted of commission of the crime." Conviction as a party to a crime requires proof that the defendant "shared a common criminal intent with the direct [perpetrator]" of the crimes. *Fleming v. State*, 306 Ga. 240, 247 (3) (b) (830 SE2d 129) (2019). A jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with the other perpetrator before, during, and after the crimes. See *Powell v. State*, 307 Ga. 96, 99 (1) (834 SE2d 822) (2019).

This Court has held that evidence was sufficient to support a malice murder conviction where it demonstrated that the defendant aided and abetted the murder, or where the defendant conspired to commit a crime that foreseeably led to murder, or both. See, e.g., *Kemp v. State*, 303 Ga. 385, 389 (1) (a) (810 SE2d 515) (2018). At Felts's trial, the State presented evidence that Felts aided and abetted Moody in the brutal stabbing murders of Kimble and Mattox and that he conspired with Moody to commit a crime — robbery — that foreseeably led to the murders. Thus, under either theory, the jury was authorized by the evidence to find that Felts was a party to

the murders. See id.

As to the first theory, the evidence authorized the jury to conclude that Felts helped to restrain Kimble and Mattox while Moody attacked and killed them. Testimony of several witnesses established that Mattox was a physically fit and athletic teenager. The medical examiner testified that it would have been very difficult for one person to have committed the crimes alone, given the size and strength of the victims, particularly Mattox, and the number and extent of the injuries that were inflicted upon both Kimble and Mattox. In his interview with the police, Felts denied that he ever touched Kimble and Mattox and insisted that he walked away once Moody began attacking them, but the jury was entitled to reject his story, particularly in light of the physical evidence regarding the manner of the killings. Felts also admitted being near the scene of the crimes with Moody after the murders, and other witnesses saw the two together the evening after Kimble and Mattox were killed. There was also evidence that, even before the victims' bodies were located by their families and neighbors, Felts had become concerned

13

about rumors that he was involved in the murders and that, shortly after the murders, he fled to South Carolina where he was later discovered and arrested. See *Rowland v. State*, 306 Ga. 59, 65 (3) n.4 (829 SE2d 81) (2019) (Evidence of "flight . . . and related conduct is admissible as evidence of consciousness of guilt, and thus of guilt itself." (citation and punctuation omitted)).

As to the second theory, Felts admitted in his interview that he conspired with and assisted Moody in committing the initial robbery that ultimately escalated to the murders. He told the police that he knew Moody had a box cutter or a screwdriver before the attacks on Kimble and Mattox and that Moody was heavily under the influence of cocaine.

This Court has determined that murder is a reasonably foreseeable consequence of a robbery. See *Kemp*, 303 Ga. at 389 (1) (a). "As a result, the intent of the actual killer may be imputed to the other active members of the conspiracy even though the homicide may not have been a part of the original common design." (Citation and punctuation omitted.) Id. Thus, the jury could find that Felts

14

was a party to the malice murders of Kimble and Mattox because his participation in the robbery and his suspicion that Moody would do something violent carried with it the foreseeable risk that the robbery could escalate into a murder. This was particularly the case because of Moody's mental state due to his use of cocaine before the robbery and his possession of a weapon. See id. Thus, the evidence presented at trial was sufficient to sustain the jury's verdicts on the malice murder counts.

(b) We next consider the sufficiency of the evidence with regard to the two counts of aggravated assault with intent to rob of which Felts was convicted. OCGA § 16-5-21 (a) (1) and (2) provide, in relevant part, that "[a] person commits the offense of aggravated assault when he or she assaults[,] [w]ith intent to . . . rob[,] [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" See also *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010). "An assault takes place when a perpetrator either attempts to commit a violent injury to the person

of the victim or commits an act which places the victim in reasonable apprehension of immediately receiving a violent injury." Id.

As discussed above, the State introduced evidence, namely Felts's own statements, that Felts and Moody were looking for someone to rob, that they saw Kimble and Mattox walking by, and that they quickly made a plan to rob them. Felts admitted that he saw Moody with a box cutter or screwdriver, that he saw Moody attack Kimble and Mattox, and that Felts was standing nearby as a lookout when Moody began attacking them. This evidence established each element of the offense of aggravated assault with intent to rob and authorized the jury to find that Felts "shared a common criminal intent with the direct [perpetrator]" of the crimes. *Fleming*, 306 Ga. at 247 (3) (b). The jury was also authorized to infer such common criminal intent between Felts and Moody from Felts's "presence, companionship, and conduct [with Moody] before, during and after the offense[s]." *Powell*, 307 Ga. at 99 (1).

In addition, other evidence also authorized the jury to determine that Felts was a more direct participant in the assaults

16

of Kimble and Mattox. The testimony of the medical examiner and testimony about the size and build of the victims, particularly Mattox, authorized the jury to determine that Moody did not act alone in committing the crimes. Therefore, the evidence authorized the jury to find that Felts was a party to the crimes of aggravated assault with intent to rob Kimble and Mattox.

(c) Finally, we consider the sufficiency of the evidence presented as to the two counts of kidnapping with bodily injury of which Felts was convicted. In 2007, when the crimes occurred, OCGA § 16-5-40 (a) provided that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." The version of OCGA § 16-5-40 (b) (4) in effect at the time provided that "[a] person convicted of the offense of kidnapping shall be punished by . . . [l]ife imprisonment or death if the person kidnapped received bodily injury."

This Court's decision in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), established four factors that should be applied

in determining whether the "asportation" requirement of the kidnapping offense in effect at the time of the crimes committed in this case had been met: (1) duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was inherent to the commission of the separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger imposed by the separate offense.

> These factors are considered as a whole; it is not necessary that all four factors weigh in favor of asportation. What must be kept in mind is the purpose of the *Garza* test, which is to determine whether the movement in question served to substantially isolate the victim[s] from protection or rescue, the evil which the kidnapping statute was originally intended to address.

(Citations and punctuation omitted.) *Mercer v. Johnson*, 304 Ga. 219, 220 (1) (818 SE2d 246) (2018).[8]

---

[8] Although *Garza* was decided after the crimes in this case occurred, in 2011, this Court determined in *Hammond v. State*, 289 Ga. 142 (710 SE2d 124) (2011), that the *Garza* factors apply retroactively. We note that, effective July 1, 2009, the General Assembly added a new subsection (b) to OCGA § 16-5-40, which provides:

  (b) (1) For the offense of kidnapping to occur, slight

The evidence presented at trial authorized the jury to determine that Felts and Moody initially encountered Kimble and Mattox on the street. Felts's statements to the police established that Moody spoke to Kimble and Mattox and attempted to lure them into a secluded spot. When he was unsuccessful, Moody (with Felts either acting as a lookout or directly assisting him) eventually forced Kimble and Mattox into the woods. Their bodies were found the next afternoon in a wooded area near an elementary school.

(i) *Duration*. As to the first *Garza* factor, the evidence authorized the jury to find that the duration of the movement was

---

movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.
(2) Movement shall not be considered merely incidental to another offense if it:
    (A) Conceals or isolates the victim;
    (B) Makes the commission of the other offense substantially easier;
    (C) Lessens the risk of detection; or
    (D) Is for the purpose of avoiding apprehension.
This Court has recognized that the 2009 amendment superseded the *Garza* standard for evaluating the "asportation" requirement for offenses occurring after July 1, 2009. See, e.g., *Hyden v. State*, 308 Ga. 218, 222 (1) (839 SE2d 506) (2020).

more than the "slight" movement this Court found to be insufficient in *Garza*. There, the movement of the victims consisted entirely of one victim falling to the floor from a standing position and then rising to sit in a chair and a second victim being moved from one room to another. See *Garza*, 284 Ga. at 702 (1). Here, by contrast, the evidence authorized the jury to find that Felts and Moody confronted Kimble and Mattox on the street and then moved them into a wooded area nearby. While it is unclear from the record exactly how far the victims were moved or how long it took to do so, "[t]he movement of the victim[s] in this case was well beyond the 'slight' movement that concerned the Court in *Garza*, and thus the first *Garza* factor was satisfied." *Williams v. State*, 291 Ga. 501, 503 (1) (b) (732 SE2d 47) (2012).

(ii) *Separate Offense.* As to the second *Garza* factor, Felts's statements to the police indicate that the movement of Kimble and Mattox occurred before Moody brandished a screwdriver, box cutter, or other weapon at them and physically attacked them after they reached the woods, ultimately killing them. That evidence

20

established the offenses of aggravated assault with intent to rob and malice murder, as charged in the indictment, but the evidence indicates that the movement of Kimble and Mattox was completed before those crimes were committed.

(iii) *Movement Inherent to Separate Offense*. With regard to the third *Garza* factor, the evidence showed that the movement of the victims was not an inherent or necessary part of the commission of the offense of aggravated assault with intent to rob or the murders of Kimble and Mattox. See *Williams*, 291 Ga. at 504 (1) (b). Movement of the victims was not required in order to commit these offenses.

(iv) *Additional Danger to Victim Caused by Movement*. With regard to the final *Garza* factor, the movement of the victims from the street to a secluded wooded area appears to have facilitated the initial plan hatched by Felts and Moody to rob the victims and concealed the physical attacks on the victims that ensued once they reached the woods. The jury was authorized to conclude that moving the victims to the woods "presented a significant additional danger"

21

to the victims. *Williams*, 291 Ga. at 504 (1) (b); see also *Hyden v. State*, 308 Ga. 218, 222 (1) (839 SE2d 506) (2020) (asportation requirement satisfied where, among other factors, the movement of the victim isolated the victim from a place where he could have been more easily found); *Inman v. State*, 294 Ga. 650, 652 (1) (b) (755 SE2d 752) (2014) (movement of victims behind a house and shed and near a wooded area increased danger to victims).

Thus, considering the *Garza* factors as a whole, the evidence presented at trial was sufficient to prove the asportation element of the kidnapping offenses in this case. Moreover, because Kimble and Mattox suffered fatal injuries in connection with the kidnapping, each element of the crime of kidnapping with bodily injury was established by the evidence presented at trial.

Although Felts contends that there was no evidence presented that he was present when Moody committed the crimes or that he participated in kidnapping the victims, as noted repeatedly above, the evidence authorized the jury to determine that Felts acted as a lookout after he and Moody made their initial plan to rob Kimble

22

and Mattox. He was thus culpable for the acts of Moody in directly moving the victims from the street to the woods. See *Williams*, 291 Ga. at 504 (1) (c). The jury could also reject Felts's version of the events and infer that Felts more directly participated in moving Kimble and Mattox and then assisted in holding them against their will before they were killed. Thus, the evidence presented at trial was sufficient to sustain Felts's convictions for kidnapping with bodily injury.

*Judgment affirmed. All the Justices concur.*

Decided May 17, 2020.

Murder. Fulton Superior Court. Before Judge Brasher.

*Brad Gardner*, for appellant.

*Paul L. Howard, Jr., District Attorney, Burke O. Doherty, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.