In the Supreme Court of Georgia

Decided:        April 4, 2016

S16A0195.  GRANT v. THE STATE.

HINES, Presiding Justice.

Jaferell Grant appeals the denial of his motion for new trial, as amended, and his convictions and sentences for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of the felony of aggravated assault in connection with the fatal shooting of Stephen Davis.  Grant challenges the sufficiency of the evidence of his guilt and the denial of his motion for a mistrial based upon allegedly  improper and prejudicial character evidence from a State's witness.  For the reasons which follow, the challenges are without merit and we affirm.[1]

[1] The fatal shooting occurred on September 27, 2008.  On April 10, 2009, a Fulton County grand jury returned a six-count indictment against Grant.  Grant was tried before a jury June 28 - July 5, 2011, and was acquitted of malice murder but found guilty of the remaining charges.  On July 14, 2011, he was sentenced to life in prison for felony murder while in the commission of aggravated assault and a consecutive term of five years in prison for possession of a firearm during the commission of a felony; the remaining verdicts were vacated by operation of law or merged for the purpose of sentencing.  *Malcolm v. State*, 263 Ga. 369, 371, 372 (4) (434 SE2d 479) (1993).  A motion for new trial was filed on July 22, 2011, amended on May 9, 2013, and denied on May 5, 2014. A notice of appeal was filed on May 8, 2014, and the case was docketed in this Court's January 2016 term.  The appeal was argued orally on February 8, 2016.

The evidence construed in favor of the verdicts showed the following. Grant's stepbrother, Jewara "Sonny" Milliner, and John "Jaybo" Robinson lived in the same apartment complex, and were involved in a feud stemming from an incident between their girlfriends, respectively Dana Watkins and Latasha Smith. On September 27, 2008, Milliner called Grant, and asked for Grant to come over because Milliner believed that Robinson had assembled a group of people and planned to jump him. Grant arrived at Milliner's apartment with three or four other men. Grant was armed with a pistol with a laser sight. One of the men with Grant then brought eight or nine other people to the scene. As the men arrived, they gathered around Milliner near Robinson's porch. The men were all armed with semi-automatic handguns with laser sights. One of the men knocked on Robinson's door and asked "what's up between you and Sonny?" But when the assembled group discovered that Robinson had his children in his apartment and not a gathering of men, the group decided it would leave. However, the group was angry because it could not complete its "mission," and it was "very hyped." At this time, Chase " Thirty Eight" Simpson exited his nearby apartment, approached the group of men which included Grant, and was

"rapping," offending some members with his lyrics. The group began to congregate near Simpson. Group members pulled up their shirts to reveal their weapons, leading Simpson to retreat towards his own door; he was followed by four or five men from the group. A group member then struck Simpson in the face with a pistol, and the group members drew their weapons. Stephen Davis exited Simpson's apartment to help Simpson. As Davis was pulling Simpson towards his apartment, the group members began firing; at least two and possibly five pistols were fired. Davis was fatally shot twice in the back.

After the shooting, Grant got into a vehicle and left the scene. He later told his stepmother it would be best if she did not know who the shooter was, so she would not be involved. Grant hired an attorney for at least one of the witnesses, and he told Watkins that if she was apprehended, "you don't know nobody." He attempted to alter his appearance by cutting off his long, thick braids or "dreads" and fled to Mobile, Alabama, where he was arrested.

1. Grant contends that the trial court erred by denying his motion for a directed verdict of acquittal on all charges, asserting that there was insufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt all of the essential elements of any of the crimes. He urges that this is so because the

3

State did not present evidence of his motive for the shooting or any physical evidence linking him to the scene, and because no witness identified him as the shooter. But, the contention is unavailing.

In reviewing a trial court's denial of a motion for a directed verdict of acquittal, this Court applies the sufficiency of the evidence test of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd2d 560) (1979). *Smith v. State*, 290 Ga. 428, 429 (1) (721 SE2d 892) (2012). And, any lack of evidence of motive or physical evidence is not fatal to a finding of sufficiency. Indeed, it is not necessary for the State to prove motive to establish the crime of felony murder. *Humphrey v. State*, 281 Ga. 596, 599 (3) (642 SE2d 23) (2007). Nor was the State required to produce any physical evidence inasmuch,

> as the testimony of a single witness is generally sufficient to establish a fact, [and t]he lack of corroboration [with physical evidence] only goes to the
weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury.

*Johnson v. State*, 296 Ga. 504, 505-506 (1) (769 SE2d 87) (2015) (quotation marks and citation omitted). Eyewitnesses placed Grant at the scene and as an armed member of the group which menaced the victim and fired at him. Every person involved in the commission of a crime is a party to it and may be

4

convicted for its commission. OCGA § 16-2-20 (a) [2]; *Robinson v. State*, ___ Ga. ___ (Case No. S15A1912, decided Feb. 8, 2016). While a person's mere presence at the scene of the crime and mere approval of the criminal act are insufficient to establish that the person was a party to the crime, and proof of a shared criminal intent with the actual perpetrators is necessary, such shared criminal intent may be inferred from the person's conduct before, during, and after the crime. *Robinson v. State*, supra. Again, the armed Grant went to the apartment complex for a confrontation; he brought armed men with him, hastily left the scene after the fatal shooting, hired legal representation for at least one of the witnesses, warned another witness not to say anything, attempted to disguise himself, and fled the state.

---

[2]OCGA § 16-2-20 (a) provides:

(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.

(b) A person is concerned in the commission of a crime only if he:
(1) Directly commits the crime;
(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
(3) Intentionally aids or abets in the commission of the crime; or
(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

The evidence was sufficient to enable a rational trier of fact to find Grant guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, supra. Accordingly, it was not error to deny Grant's motion for directed verdicts of acquittal.

2. Grant further contends that the trial court erred by denying his motion for a mistrial when the lead investigator in the case on cross-examination referred to Grant as a drug dealer known to be in possession of firearms, thereby improperly placing his character into evidence.[3] He argues that the "nature of the error was egregious"; its prejudicial impact was exacerbated by other evidence in the case, namely a certified copy of Grant's prior conviction for possession of cocaine with intent to distribute; the State failed in its responsibility to prevent such testimony; and the trial court "could do little to correct the error once it was

---

[3]Grant cites the exchange,

DEFENSE COUNSEL: Okay. Did Sonny ever tell you that he told Jaferell to bring people over there and to bring people over there that had firearms?

INVESTIGATOR:      Not in those particular terms, no.

DEFENSE COUNSEL: Okay.

INVESTIGATOR:      What he told me was he knew Jaferell was a drug dealer and he had guns and so he called him over there --

6

made." However, this contention of error is likewise unavailing.

Following the cited exchange and the defense's objection and unsuccessful motion for a mistrial, the trial court gave the jury a curative instruction to which the defense agreed. The instruction directed the jury to disregard the investigator's response.[4] Also prior to giving the curative instruction, the trial court, outside the jury's presence, got assurance from the prosecution that the investigator had been warned not to get into such matters.

Whether to declare a mistrial is a matter for the discretion of the trial court, and the denial of a mistrial constitutes reversible error only if it appears that a mistrial was required to preserve the defendant's right to a fair trial. *McKibbins v. State*, 293 Ga. 843, 848 (3) (750 SE2d 314) (2013). And, curative instructions can be an adequate remedy when a witness inadvertently testifies about a defendant's prior convictions or criminal acts so as to constitute improper character evidence. *Bunnell v. State*, 292 Ga. 253, 257-258 (4) (735 SE2d 281)

---

[4]The court directed,

> All right, ladies and gentlemen. I am instructing
> you that you are to disregard the detective's last
> response to [named defense counsel's] question.
> That is not properly before you and should not be
> considered.

7

(2013). This is certainly so when the objected-to testimony appears to be spontaneous on the part of the witness and not directly solicited by the State. See *Curry v. State*, 291 Ga. 446, 452 (4) (239 SE2d 370) (2012).

In this case, the testimony at issue referred to Grant's history, not to his actions on the night in question, and it did not inform the jury of anything new because there was evidence that Grant came to the crime scene armed, i.e., that he "had guns," and that he had earlier been convicted of a crime involving drug dealing. Furthermore, there is no evidence that the testimony, which again was a response on cross-examination by the defense, was in any manner encouraged or elicited by the State; in fact, the evidence is quite to the contrary.

Simply, there is no showing that a mistrial was required to preserve Grant's right to a fair trial, and consequently, the trial court did not abuse its discretion in refusing to grant one. *McKibbins v. State*, supra at 848 (3).

<u>Judgments affirmed. All the Justices concur</u>.