301 Ga. 290
FINAL COPY


S17A0483.  SPEZIALI v. THE STATE.


HINES, Chief Justice.

Appellant William Speziali was convicted of the malice murder of Jimmy Breedlove and other related crimes.  On appeal, he contends, among other things, that his trial counsel was constitutionally ineffective and that the evidence presented at trial was insufficient to support his convictions.  For the reasons that follow, we affirm.[1]

1.   Viewing the evidence in the light most favorable to the verdicts, the evidence presented at trial showed that, in December 2010, the victim asked for a pre-warrant hearing in the local magistrate court, telling the judge that appellant had forged three checks on the victim's account.  The judge testified that the victim and appellant

---

[1] Breedlove was killed on March 29, 2011.  On April 29, 2011, a Jeff Davis County grand jury indicted appellant for malice murder; felony murder based on the aggravated assault of the victim by striking him on the head with a deadly weapon, an unknown blunt object; felony murder based on the aggravated assault of the victim by cutting his throat with a deadly weapon; two counts of aggravated assault; burglary; and making a false statement. On June 21, 2012, a jury found appellant guilty on all counts, and on June 25, the trial court sentenced appellant to life in prison for malice murder, to two consecutive 20-year terms in prison on the two aggravated assault verdicts, to 20 concurrent years in prison for burglary, and to five concurrent years for making a false statement.  The felony murder verdicts were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993).  On July 2, 2012, appellant filed a motion for new trial, which he amended on August 18, 2014.  On November 14, 2014, the trial court ruled that appellant was not entitled to a new trial, but agreed with appellant that the court should not have sentenced him on the two aggravated assault verdicts, because those verdicts merged with the verdict for malice murder.  On September 23, 2015, the court entered a new sentencing order, vacating the sentences on the two aggravated assault verdicts.  See *Schutt v. State*, 292 Ga. 625, 627 (740 SE2d 163) (2013) (holding that, because there was not a deliberate interval in the series of wounds that resulted in the victim's death, the aggravated assault conviction merged with the malice murder conviction). On October 21, 2015, appellant filed a notice of appeal, and the case was docketed in this Court for the term beginning in December 2016 and submitted for decision on the briefs.

reached an agreement regarding the dispute before a hearing was held. The agreement was supposed to be completed by February 1, but was not. The judge added that the victim called her numerous times in early 2011, including several times in February, saying that appellant was threatening him and that the victim was afraid that appellant was going to harm him. The last such call was at the end of February or early in March. The judge said that, during the calls, she could hear the fear in the victim's voice.

Greg Rowland, a friend of appellant, testified that, on March 29, 2011, he and appellant spent several hours running errands and visiting people in appellant's car. Their last stop was the victim's home. It was dark when they drove into the victim's driveway. Appellant parked so that the driver's door of the car was very close to the front door of the victim's mobile home. Appellant got out of the car, told Rowland that he would be right back, and knocked on the door. Rowland then "heard [appellant] say, it's Will. Apparently, [the victim] asked who it was. But I heard [appellant] say, Will, and I heard the door close when he went [in]." Rowland dozed off for a short period of time, and when he woke up, he went to knock on the door. Just before he did, he heard glass breaking. When he knocked, appellant answered and told Rowland that he would be out shortly. Rowland got back in the car and "waited and waited," and "just before" he was going to knock on the door again, appellant came out and was wearing a different shirt. He got in the car and drove off at a "really excessive speed." Rowland asked appellant why he was driving so fast, and appellant said, "I just beat his ass." Appellant dropped Rowland off at his sister's house. Before appellant drove away, he said, "Greg, don't tell nobody we went to [the victim's] house, and I mean it."

On March 31, a deputy sheriff responded to a burglary call at the victim's home. When he arrived, one of the victim's neighbors was sitting on his front steps. She told the deputy that she had not seen the victim in a few days and was concerned about him. The door to the mobile home was unlocked, so the deputy opened it and looked in. He saw the victim, who appeared to be dead, lying on the floor. The deputy called for backup and secured the scene. A medical technician arrived shortly thereafter and pronounced the victim dead. He had

suffered multiple facial and skull fractures, multiple lacerations of the face and scalp, several fractured ribs, and a nine-inch laceration of his neck that cut his jugular veins and his right carotid artery and would have caused his death within a minute. The victim also had a number of defensive wounds on his arms, hands, and fingers.

At trial, appellant and the State stipulated that a stain near the gearshift of appellant's car contained the victim's DNA and that the victim's blood was found on the driver's seat of appellant's car. Moreover, the owner of a local automobile sales company testified that he had sold appellant the car he was driving on the day of the crimes. According to him, around 3:30 p.m. on Friday, March 31, appellant called him, said that the gas fumes in the car were so bad that he was afraid to drive it, and asked the automobile dealer to come get the car. The dealer did so, and he testified that he did not smell gas fumes in the car. Later that same day, the GBI contacted him and asked him if he had done anything to the car. The dealer had not and stored the car over the weekend. On Monday morning, the GBI retrieved the car.

On March 31 and April 15, 2011, an investigator with the sheriff's office and a GBI agent interviewed appellant. On March 31, appellant denied being at the victim's home on March 29. During the April 15 interview, the investigator and the GBI agent asked appellant about finding the victim's blood in his car. Appellant said that the victim had never been in his car, and he added that he had never had a physical altercation with the victim and had not been at the victim's home on March 29. He said that he was last there on February 9, 2011. The GBI agent testified that he did not notice any defensive wounds to appellant's hands or any bruises on his face.

Appellant testified at trial, claiming that he acted in self-defense. According to appellant, although he and his wife had lived with the victim for three days in early February 2011, his son had stayed with appellant's parents. According to appellant, he owed the victim about $300 or $400, and they discussed appellant doing some work at the victim's home to satisfy the debt. Appellant said that he made partial payments to satisfy the agreement that he and the victim reached in court, but he had not repaid all the money. Appellant maintained that he was not mad at the victim because the victim had helped him by

3

letting him stay at his house and by giving him some money for his truck payments.

On March 29, when he and Rowland drove to the victim's home, appellant knocked on the door, and the victim let him in. Appellant told the victim that he wanted to work to make some money; that his family was surviving on very little food; and that, when his son got out of the shower recently, appellant noticed that he was "looking like skin and bones." The victim then said that he would pay "to see a picture like that." This upset appellant, and he told the victim that, if they were "anywhere else, [he] would beat his ass." The victim jumped up, asked him why he thought he could "just come over here and just get whatever you all want and not give nothing back," and approached appellant with a knife drawn. The victim tried to stab him, and, as appellant was backing up, he tripped and fell down. The victim jumped on him, and they struggled over the knife. Appellant pushed the knife up and cut the victim "across the throat."

Eventually, the victim dropped the knife, and appellant picked it up and hit the victim in the back with it. Appellant then dropped the knife and ran towards the front door, but the victim picked up the knife, ran after him, and blocked his way. According to appellant, he next ran into the kitchen and tripped and a piece of particle board fell. They fought in the kitchen, with appellant trying to escape but the victim successfully blocking him. The victim was bleeding everywhere, and appellant told him that he was hurt badly and needed help. The victim, however, who still had the knife, continued to attack him. Appellant picked up the particle board and hit the victim with it numerous times. The victim fell down and did not get back up. Appellant washed himself off at the sink and left the house.

Appellant contends that the evidence was insufficient to support his convictions. However, we conclude that the evidence presented at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

4

2. Appellant contends that trial counsel provided constitutionally ineffective assistance. We disagree.

To prevail on this claim, appellant must show both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Wiggins v. State*, 295 Ga. 684, 686 (763 SE2d 484) (2014).

> To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Capps v. State*, 300 Ga. 6, 8 (792 SE2d 665) (2016) (citation and punctuation omitted). Furthermore,

> there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of

5

sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U. S. at 697.

(a) Appellant first contends that trial counsel was ineffective in waiving his right to a *Jackson-Denno*[2] hearing to determine the admissibility of his statements to law enforcement officers.[3] However, the testimony of the officers who interviewed appellant would have authorized the trial court, considering the totality of the circumstances, to conclude that the State had shown by a preponderance of the evidence that appellant knowingly and voluntarily waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and that his statements were voluntary. See *Sosniak v. State*, 287 Ga. 279, 279 (1) (695 SE2d 604) (2010) ("'The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[3] At trial, before having a law enforcement officer testify about the April 15 interview with appellant, the prosecutor stated that he thought that the defense was waiving appellant's right to a *Jackson-Denno* hearing. Appellant's trial counsel stated that, based on the *Miranda* waiver in the record and based on his review of the recording of the interviews, he did not see the need for a *Jackson-Denno* hearing.

circumstances.'" (citation omitted)).  Moreover, appellant offered no evidence at the motion for new trial hearing to counter that trial evidence.  We therefore conclude that appellant has failed to show prejudice on this claim of ineffective assistance of counsel.

(b)      Appellant next contends that trial counsel provided ineffective assistance because he failed to object when the trial court, according to appellant, gave a sequential jury charge that violated *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992).  Even assuming that the trial court gave an improper sequential charge in this case and that trial counsel performed deficiently in failing to object to it, we conclude that appellant has failed to carry his burden to show prejudice.[4]

---

[4] The trial court charged the jury as follows:

> Now, ladies and gentlemen, however, if you do not believe beyond a reasonable doubt that the defendant is guilty of the indicted crime of Malice Murder or Felony Murder, you may consider a lesser included offense.  After consideration of all the evidence, before you would be authorized to return a verdict of guilty of Malice Murder or Felony Murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to Voluntary Manslaughter.

We have held that a charge similar to the first sentence of the above charge constituted an improper sequential charge.  See *Battles v. Chapman*, 269 Ga. 702, 705 (506 SE2d 838) (1998) (charging the jury that "'if you do not believe [the defendant] is guilty of either malice murder or felony murder, you should then consider whether or not . . . [he] is guilty of the lesser included offense of voluntary manslaughter'"), modified on other grounds in *Shorter v. Waters*, 275 Ga. 581, 584 (571 SE2d 373) (2002).

Where, as here, "the defendant is convicted of malice murder, the problem which *Edge* seeks to address is not present." *Terry v. State*, 263 Ga. 294, 295 (430 SE2d 731) (1993). Accordingly, we have held on numerous occasions that an *Edge* violation is not harmful where the defendant is convicted of malice murder. See, e.g., *Cloud v. State*, 290 Ga. 193, 196-197 (719 SE2d 477) (2011); *Roscoe v. State*, 288 Ga. 775, 775 (707 SE2d 90) (2011); *White v. State*, 287 Ga. 713, 719 (699 SE2d 291) (2010); *McGill v. State*, 263 Ga. 81, 82-83 (428 SE2d 341) (1993). Similarly, here, because appellant was convicted of malice murder, any error of trial counsel in not objecting to the trial court's charge was not prejudicial to appellant.

(c) Appellant contends that trial counsel was ineffective when his cross-examination of the magistrate court judge permitted the judge to bolster her testimony on direct examination that the victim was afraid of appellant. However, even if trial counsel performed deficiently in his cross-examination of the judge, appellant cannot satisfy the prejudice prong of the ineffectiveness test. Considering that the judge testified on direct examination that the victim was afraid of appellant and considering the strength of the evidence against

8

appellant, we do not believe that, even if trial counsel's cross-examination had not allowed the judge to repeat that the victim feared appellant, the result of the trial would in reasonable probability have changed.

(d) Appellant contends that his trial counsel was ineffective because he did not adequately investigate the case.

Appellant alleges that his trial counsel failed to interview the majority of the witnesses before trial. Trial counsel, however, testified that appellant told him the main witness he should interview was Rowland and that trial counsel interviewed him. "Outside of law enforcement," the other witness that trial counsel interviewed was the magistrate court judge. The record shows that Rowland, the judge, and law enforcement officers constituted more than the majority of the witnesses at trial, and many of the other witnesses, such as the victim's brother, who testified only to identify the victim, and a woman who cleaned the victim's home just before the crimes, offered no meaningful evidence against appellant. Most importantly, appellant has failed to show how the failure to interview more witnesses

prejudiced him, as he offered no evidence on this issue at the motion for new trial hearing. See *Shank v. State*, 290 Ga. 844, 848 (725 SE2d 246) (2012) (holding that a claim that trial counsel was ineffective because he did not adequately investigate the case was without merit because the defendant "failed to show that a more thorough investigation would have yielded any significant exculpatory evidence and thus failed to establish prejudice resulting from the allegedly deficient investigation").

Appellant also argues that, if his trial counsel had conducted a better investigation of the potential testimony of the magistrate court judge, he would not have cross-examined her so as to give her the opportunity to repeat her direct examination testimony that the victim was afraid of appellant. Appellant says that trial counsel could have interviewed family and friends of appellant and the victim about whether the victim feared appellant and could have, based on that information, either curtailed his cross-examination of the judge about the matter or offered evidence to rebut her testimony. Appellant, however, failed to show that a more thorough investigation would have yielded any witnesses that would have been able to rebut the judge's

10

direct examination testimony, see id., and for the same reasons that appellant failed to show prejudice on his claim that trial counsel was ineffective in his cross-examination of the judge, we conclude that appellant cannot show prejudice regarding this claim of ineffective assistance, see Division 2 (c) above.

Appellant next contends that trial counsel's inadequate preparation led him to waive appellant's constitutional right to confront his accusers when counsel waived his right to a *Jackson-Denno* hearing and stipulated to the admission of DNA and blood evidence at trial. However, trial counsel was aware of appellant's right of confrontation, and appellant does not explain how trial counsel was inadequately prepared in this regard or how any lack of preparation led trial counsel to waive a *Jackson-Denno* hearing and to enter the stipulation. In any event, for the same reasons that we concluded that appellant failed to show prejudice on his claim that counsel was ineffective in waiving his right to a *Jackson-Denno* hearing, see Division 2 (a) above, we conclude that appellant cannot show prejudice on his claim that counsel's lack of preparation led him to waive the hearing. Moreover, regarding the stipulation, trial counsel testified at the motion for new

11

trial hearing that he stipulated to the evidence being admitted because that evidence showed that appellant was at the crime scene and appellant's trial strategy was to admit that he was at the scene but to put forth the defense that the killing was justified or was manslaughter. Because the stipulation was consistent with appellant's defense, entering into it was a valid trial strategy. See *Chance v. State*, 291 Ga. 241, 247 (728 SE2d 635) (2012).

3. As previously explained, a GBI agent testified about his interview of appellant on March 31. Near the end of his direct examination, the agent said that, when he interviewed appellant, he did not see any defensive wounds on him or any sign that he had been in an altercation. In an apparent attempt to explain how he could make those observations, the agent testified that appellant was in a short sleeve, orange jumpsuit provided by the jail at the time of the interview. The remainder of the agent's direct examination consisted of questions and answers comprising about one more page of the transcript. At that point, appellant objected that appellant's character had been placed in issue improperly by the agent's testimony about the jumpsuit and moved for a mistrial, which the trial court denied. On appeal, appellant

12

argues that, because the agent testified that appellant was not under arrest in this case, the jury would have thought that he was wearing a prison jumpsuit because he was in jail for another offense and that the trial court therefore erred in failing to grant his motion for a mistrial.

Pretermitting whether appellant properly preserved this issue for review, see *Burrell v. State*, 301 Ga. 21, 26 (5) (799 SE2d 181) (2017) (explaining that "'[a] motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion'" and holding that the defendant's motion for a mistrial was not preserved because it was not contemporaneously made (citation omitted)), we conclude that the trial court did not abuse its discretion in denying appellant's motion, see *Grant v. State*, 298 Ga. 835, 838 (785 SE2d 285) (2016) ("Whether to declare a mistrial is a matter for the discretion of the trial court, and the denial of a mistrial constitutes reversible error only if it appears that a mistrial was required to preserve the defendant's right to a fair trial."). Here, the State's theory of the case, for which it offered significant evidence, was that appellant was not in jail on the evening of March 29, but committed the crimes for which he was on trial that evening. The interview with the GBI

agent occurred at 3:40 p.m. on March 31, less than two days after the crimes were committed. The GBI agent testified that a local police officer picked up appellant and brought him to the local jail for the purpose of the interview on March 31. Moreover, the GBI agent testified that appellant was not under arrest at the time of the interview and, in fact, left on his own after the interview. Under these circumstances, we consider it unlikely that the jury would have thought that appellant was in prison for another crime at the time of the interview simply because he was wearing an orange jumpsuit, and we therefore conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. See id.[5]

4. Appellant contends that the trial court erred in failing to hold, sua sponte, a *Jackson-Denno* hearing on the voluntariness of his statements to the police. We disagree.

Although a defendant who objects to the admission of his statements to the police is "entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are

---

[5] We note that, on cross-examination, after the trial court had denied appellant's motion for mistrial, the GBI agent testified that it was "normal for people to be dressed out in a jumpsuit for a pre-trial interview or a pre-arrest interview" conducted at the local jail.

actually and reliably determined," *Jackson v. Denno*, 378 U. S. 368, 380 (84 SCt 1774, 12 LE2d 908) (1964), "there is no constitutional requirement that the trial court conduct, sua sponte, a *Jackson v. Denno* hearing on voluntariness absent a contemporaneous challenge to the use of the confession in evidence," *Hudson v. State*, 250 Ga. 479, 485 (299 SE2d 531) (1983) (citing to *Wainwright v. Sykes*, 433 U. S. 72, 86 (97 SCt 2497, 53 LE2d 594) (1977)).  Here, appellant did not contest the voluntariness of his statements to the police and told the trial court that he did not believe that it was necessary for the court to hold a *Jackson-Denno* hearing.  Accordingly, the trial court did not err in failing to hold one.

5.  Appellant contends that the trial court erred in giving an improper sequential charge in violation of *Edge*, 261 Ga. at 867. Appellant, however, concedes that there was no objection to the charge, that the charge is subject only to plain error review, and that the charge does not constitute reversible plain error.[6]  See *Stanley v. State*, 300 Ga. 587, 590 (797 SE2d 98) (2017) (holding that reversal is authorized

---

[6] As part of this enumeration, appellant reiterates that trial counsel was constitutionally ineffective in failing to object to the charge, an issue we resolved adversely to appellant in Division 2 (b) above.

15

under the plain error doctrine only "'if all four prongs of the standard . . . are met: the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings'" (citation omitted)). We agree with appellant that the trial court's charge did not constitute reversible plain error. Accordingly, this enumeration is without merit.

Judgments affirmed. All the Justices concur.

Decided May 30, 2017.

Murder. Jeff Davis Superior Court. Before Judge Wilkes.

Jonathan P. Lockwood, for appellant.

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Hadley H. Mann, Thomas E. Buscemi, Jan Kennedy, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith,

Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney

General, for appellee.