**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 19, 2023

S23A0670.  HAMILTON v. THE STATE.

BETHEL, Justice.

Nuwrulhaqq Hamilton was convicted of felony murder and other crimes in connection with the shooting death of Antonio Felton.[1] On appeal, Hamilton contends that: (1) the trial court erred

---

[1] The crimes occurred on March 30, 2012. On April 2, 2013, a Bibb County grand jury jointly indicted Hamilton and Joseph Michael Williams for felony murder premised on the aggravated assault of Felton (Count 1), malice murder (Count 2), aggravated assault of Felton (Count 3), aggravated assault of Siedah Sanders (Count 4), and possession of a firearm during the commission of a felony (the aggravated assault of Felton) (Count 5). At a joint trial with Williams held May 12 to 15, 2014, a Bibb County jury found Hamilton guilty of Counts 1 and 3-5, and the trial court directed a verdict of not guilty on Count 2. The court sentenced Hamilton to serve life in prison on Count 1, twenty years in prison on Count 4 to be served concurrently to Count 1, and five years in prison on Count 5 to be served consecutively to Count 4. The trial court merged Count 3 into Count 1.

Williams was found guilty of all counts. This Court previously affirmed his convictions. See *Williams v. State*, 306 Ga. 674 (832 SE2d 843) (2019). Hamilton filed a timely motion for new trial, which he amended twice through new counsel. Following a hearing on March 15, 2022, the trial court denied Hamilton's amended motion on November 17, 2022. Hamilton filed a timely notice of appeal, and his case was docketed to the April 2023 term of this Court and submitted for a decision on the briefs.

by denying his motion for directed verdict as to the counts of felony murder, aggravated assault, and possession of a firearm during the commission of a felony; and (2) the trial court plainly erred by failing to give, and his trial counsel provided ineffective assistance by failing to request, a jury charge on Hamilton's good character. These claims fail, and, therefore, we affirm Hamilton's convictions.

1. Viewed in the light most favorable to the verdicts,[2] the evidence at trial showed that Felton and his cousin, Siedah Sanders, stopped at a Bibb County convenience store on the night of March 30, 2012. Surveillance video taken from multiple vantage points outside the convenience store[3] captured the events that followed. Felton parked next to the passenger-side of a vehicle driven by co-defendant Joseph Williams, in which Hamilton, Katrina Burkes, and Tanisha Burkes were passengers. After Felton parked, Williams

---

[2] Where an appellant is asking this Court to review a lower court's "refusal to grant a motion for a directed verdict, this [C]ourt can only review the case under the standard espoused in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979) to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict." *Willis v. State*, 263 Ga. 597, 598 (436 SE2d 204) (1993).

[3] This video surveillance footage was admitted into evidence and played for the jury.

and Hamilton exited their vehicle and approached the convenience store door while Katrina and Tanisha remained in the backseat.

Felton exited his vehicle and began urinating on the ground between the two vehicles. When Williams walked into the store, Hamilton returned to the vehicle, noticed Felton, and confronted him. After the confrontation, Felton entered the store. When Williams returned to his vehicle, Hamilton began gesturing toward the area where Felton had urinated. Surveillance footage showed that the two men entered Williams's vehicle, and Katrina testified at trial that she observed Hamilton hand Williams a gun, though the surveillance footage does not show what transpired inside the vehicle. Williams then exited the vehicle and leaned against it; Hamilton remained in the front passenger seat with the window lowered.

When Felton exited the store, Williams and Hamilton again confronted Felton about urinating between his vehicle and theirs. Felton eventually entered his vehicle, where Sanders was waiting, and began driving away. As Felton drove out of the parking lot, he

3

continued to argue with Williams and Hamilton through the vehicle's lowered window. Williams walked behind Felton's car with a firearm in his hand, at which point Hamilton, Katrina, and Tanisha exited Williams's vehicle. Katrina and Tanisha ran away, but Hamilton joined Williams, standing beside him at the back of the vehicle. Williams fired at Felton's car, striking Felton in the back of the head and killing him. Williams and Hamilton then fled the scene in Williams's vehicle.

At trial, a pawn shop owner testified that he sold Hamilton a new .45-caliber Glock pistol in February 2012, less than two months before the crimes, and a receipt reflecting the transaction and showing the pistol's serial number was entered into evidence. Shell casings recovered from the scene were determined to have been fired from a .45-caliber Glock pistol. And the bullet recovered from Felton's skull was a .45-caliber metal jacketed bullet that was "consistent with being fired from a Glock 45 pistol." Investigators also recovered from Williams's vehicle a Glock magazine and a box of .45-caliber automatic bullets, as well as packaging and a receipt

4

for a Glock pistol. The serial number on the packaging matched the serial number shown on the receipt from the pawn shop purchase.

2. Hamilton argues that the trial court erred by denying his motion for directed verdict as to the counts of felony murder, aggravated assault, and possession of a firearm during the commission of a felony because the evidence established only his "mere presence" at the scene.[4] We disagree.

At trial, after the State finished presenting its case, the defendants moved for directed verdicts of acquittal on all counts. As to Hamilton, the trial court ultimately granted the motion as to the malice murder count but denied the motion as to the other counts. The court stated that its decision was based "largely" on *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1984), which it reasoned was a "very similar case." According to the trial court:

> [T]here was no direct evidence of any kind that the defendant in this case intended the outcome which occurred. The mere fact that he participated in the act of

---

[4] While Hamilton raises these arguments with respect to Counts 1 and 3-5, the court merged Count 3 (the aggravated assault of Felton) into Count 1 (the felony murder of Felton). Therefore, his challenge to Count 3 is moot. See *Broxton v. State*, 306 Ga. 127, 136 (4) n.6 (829 SE2d 333) (2019).

bringing the shotgun and shells along or may have pointed the gun at a separate victim does not constructively supply any intent to shoot the deceased in this case. There is no direct evidence of his participation and no circumstantial evidence, aside from his presence. And I think that is exactly what we have here as far as Count 2 is concerned as to Mr. Hamilton.

Hamilton argues that this reasoning extends to the remaining counts as well and, therefore, that the trial court erred by failing to grant a directed verdict. We disagree.[5]

> The test established in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), is the proper test for us to use when a challenge to the sufficiency of the evidence arises from the denial of a motion for directed verdict. See *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984). Under that test, we view all of the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson*, 443 U. S. at 319.

*Holmes v. State*, 307 Ga. 441, 443 (1) (b) (836 SE2d 97) (2019).

Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with

---

[5] We express no opinion as to whether the trial court's ruling on Count 2 was correct.

6

and convicted of commission of the crime." "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation and punctuation omitted.) *Strozier v. State*, 277 Ga. 78, 79 (2) (586 SE2d 309) (2003). See also *Grant v. State*, 298 Ga. 835, 837 (1) (785 SE2d 285) (2016). And "criminal intent is a question for the jury." (Citation omitted.) *Jones v. State*, 314 Ga. 214, 231 (3) (875 SE2d 737) (2022).

In this case, a rational jury could conclude from the evidence presented at trial and summarized above that, on the night of the shooting, Hamilton was more than merely present and in fact was a knowing participant when he initiated a dispute with Felton, provoked Williams's ire, handed his gun to Williams, who was angry, stood by as Williams fired at the vehicle and fatally shot Felton, and then fled the scene of the crime with Williams. See *Williams v. State*, 291 Ga. 501, 504 (1) (c) (732 SE2d 47) (2012) (concluding that the evidence established that defendant was a party to the crime where

it showed that he was present when the crimes were committed and the jury could infer from his conduct before and after the crimes that he shared a common criminal intent with the actual perpetrators); *Burks v. State*, 268 Ga. 504, 504 (491 SE2d 368) (1997) (concluding that the jury could reasonably infer that defendant was a party to the crimes of felony murder, aggravated assault, and possession of a firearm during the commission of a crime where the defendant loaded a gun while in the company of his cousin, initiated a fight, and encouraged his cousin to shoot the victim). See also *Holliman v. State*, 257 Ga. 209, 210 (1) (356 SE2d 886) (1987) ("The primary difference between the offenses of malice murder and felony murder is that felony murder does not require malice or the intent to kill. Felony murder does, however, require that the defendant possess the requisite criminal intent to commit the underlying felony. For the conviction in this case to stand, the jury must have found that the defendant possessed the criminal intent to commit aggravated assault." (citation omitted)); *Manzano v. State*, 290 Ga. 892, 893 (1) n.2 (725 SE2d 326) (2012) ("[A] jury is clearly authorized to find a

defendant guilty of felony murder even where it finds that a defendant did not possess the requisite 'malice' to sustain a malice murder conviction."). Therefore, the trial court did not err by denying Hamilton's motion for a directed verdict with respect to the aggravated assault of Sanders, the felony murder of Felton, and the possession of a firearm during the commission of a felony.

3. As part of his defense at trial, Hamilton called three character witnesses who each testified briefly to his character. Pointing to their general testimony, Hamilton argues that he was entitled to a jury instruction that evidence of good character may establish reasonable doubt. See, e.g., *State v. Hobbs*, 288 Ga. 551, 552 (705 SE2d 147) (2010) ("Good character is a substantive fact at trial, and can by itself create reasonable doubt as to a defendant's guilt and lead to an acquittal."). But Hamilton did not request, and the trial court did not give, such an instruction. Thus, we review his claim for plain error only.[6] See OCGA § 17-8-58 (b) (authorizing

---

[6] Hamilton acknowledges that the plain error standard applies because trial counsel did not object to the omission of this charge from the jury instructions.

review of jury instructions for plain error). On appeal, Hamilton argues that the trial court plainly erred by failing to charge the jury on good character evidence and that his trial counsel was ineffective for failing to request such a charge. On both points, we disagree.

(a) We turn first to Hamilton's claim that the trial court plainly erred by failing to charge the jury on good character evidence. To establish plain error, Hamilton must show that "the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Punctuation omitted.) *Smith v. State*, 307 Ga. 680, 687-688 (3) (838 SE2d 321) (2020). "[I]f an appellant fails to establish any one of these elements, his plain error claim fails." (Citation omitted.) *Wright v. State*, 315 Ga. 459, 462 (3) (883 SE2d 294) (2023).

Because we conclude that a good character instruction would not have changed the outcome of Hamilton's trial, we need not decide whether it was obvious legal error for the trial court not to

10

instruct the jury sua sponte on Hamilton's good character. See *Smith*, 307 Ga. at 688 (3). Indeed, the evidence against Hamilton was strong. The crimes were captured on video surveillance footage, which was played for the jury at trial. The evidence from the surveillance footage and witness testimony was that Hamilton initiated the dispute with Felton, provided his gun to Williams, stood next to Williams as Williams fired at the vehicle and fatally shot Felton, and fled the scene of the crime with Williams. Further, the jury here was instructed to "giv[e] consideration to all the facts and circumstances of th[e] case" and to "determine the facts of the case from all of the evidence presented." See *Smith*, 307 Ga. at 688 (3). Given these circumstances, Hamilton has not demonstrated that it is likely that the jury would have reached a different result if it had been expressly told that it could consider evidence of Hamilton's good character, and this claim fails.

(b) Hamilton's claim that trial counsel was constitutionally ineffective for failing to request a jury charge on good character fares no better. To prevail on a claim of ineffective assistance, an

appellant must prove both that the attorney's performance was professionally deficient and that he was prejudiced by this deficiency. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). An appellant must satisfy both prongs of the *Strickland* test, and if the appellant's showing fails as to one prong, this Court need not examine the other. See id. at 697. Because we have "equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim," even if we assume that trial counsel was deficient for failing to request a good character instruction, Hamilton has not shown prejudice for the reasons previously explained. *Jackson v. State*, 306 Ga. 69, 84-85 (4) (b) (829 SE2d 142) (2019). Accordingly, this claim also fails.

*Judgment affirmed. All the Justices concur.*